**IN THE UNITED STATES DISTRICT COURT**

**FOR THE EASTERN DISTRICT OF CALIFORNIA**

CARL FOUST,

Plaintiff,

v.

WARDEN,

Defendant.

No. 2:21-CV-0312-DJC-DMC-P

ORDER

Plaintiff, a prisoner proceeding pro se, brings this civil rights action under 42 U.S.C. § 1983. Before the Court is Plaintiff's second amended complaint. ECF No. 43.

## I. SCREENING REQUIREMENT

The Court must screen complaints from prisoners seeking relief against a governmental entity, officer, or employee. See 28 U.S.C. § 1915A(a). The Court must identify any cognizable claims and dismiss any portion of the complaint that is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. See 28 U.S.C. § 1915A(b)(1), (2).

/ / /

/ / /

/ / /

A complaint must contain a short and plain statement of the claim showing that a plaintiff is entitled to relief. Fed. R. Civ. P. 8(a)(2). The complaint must provide "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). To survive screening, a plaintiff's claims must be facially plausible, which requires sufficient factual detail to allow the Court to reasonably infer that each named defendant is liable for the misconduct alleged. Id. at 678–79; Moss v. U.S. Secret Service, 572 F.3d 962, 969 (9th Cir. 2009). Plaintiffs must demonstrate that each defendant personally participated in the deprivation of the plaintiff's rights. Jones v. Williams, 297 F.3d 930, 934 (9th Cir. 2002). If the allegations "do not permit the court to infer more than the mere possibility of misconduct," the complaint does not state a claim. Iqbal, 556 U.S. at 679. The complaint need not identify "a precise legal theory." Kobold v. Good Samaritan Reg'l Med. Ctr., 832 F.3d 1024, 1038 (9th Cir. 2016).

The Court must construe a pro se litigant's complaint liberally. See Haines v. Kerner, 404 U.S. 519, 520 (1972) (per curiam); Wilhelm v. Rotman, 680 F.3d 1113, 1121 (9th Cir. 2012). However, a liberal interpretation of a complaint may not supply a claim's essential elements if they were not pled. Bruns v. Nat'l Credit Union Admin., 122 F.3d 1251, 1257 (9th Cir. 1997). The Court may dismiss a pro se litigant's complaint "if it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Hayes v. Idaho Corr. Ctr., 849 F.3d 1204, 1208 (9th Cir. 2017).

## II. PLAINTIFF'S ALLEGATIONS

Plaintiff names as defendants "L.T.A. Mrs. Star," "DDP C/O Pierreman," "Sgt. Ledesma," and "Warden Cvana." See ECF No. 43, pg. 1. Based on the factual allegations

/ / /

/ / /

/ / /

contained in the second amended complaint, Plaintiff raises three claims as follows, all alleging retaliation in connection with mail. See id.

Claim I

Plaintiff states:

> I am being discriminated against in seeking to get my legal papers to the Court in the proper manner. I'm a DDP inmate and need assistance with redding [sic] and writing. DDP Sgt. Ledesma, while assisting me, took my legal mail to I-2 holding unit, to get Scotch tape. He refused to allow me to watch him seal and then[n] sign the envelopes. He also refused to allow me into I-2 while he was taping and signing the legal mail. He went into I-2 housing unit for 10-15 minutes and when he came out the letters were sealed and I watched him put the legal letters in the mail box. I did not see who actually signed the envelopes. The subject of one of the pieces of legal mail was a complaint on a DDP Correctional Officer Pierrreman, who worked on I-2. I fear that since the legal mail had not been sealed, and that Sgt. Ledesma took 10-15 min. to get the tape on the unit, that I feel that I'm being retaliated on, because the contents of the complaint potentially could have been shared with C/O Pierreman, a DDP officer, the subject of the complaint.

Id. at 3.

Claim II

> Additionally, I included a request for the Judge to interview me over teleconference because of the retaliation I been going through, regarding my legal mail getting tampered with. For example, the Court gave me a 30-day extension and the legal mail took longer them [sic] 30 days to reach me. The Court sent it 11-3-21 and I received the legal mail on 12-3-21. For reference sake, one legal mail pertained to case 2:21-cv-00510-DMC-P. The other legal mail was reference to court case no. 2:19-cv-02579-JAM-DMC. I am also attached copies of what I was sending to Court to make sure it was properly sent. I am requesting to speak to the Judge on video because my eyes are messed up and I'm pending eye surgery. I am also requesting a private investigator and attorney due to my lack of vision (I'm awaiting surgery for my eyes). I am over quarantine and retaliation, and I am have the DDP/Clark L.T.A. Mrs. Star violated my civil rights and [indecipherable] by condescending me front of the inmate that lives in cell I-2-236. She knows I have two cases pending in Federal Court, I am DDP, I want this.

Id. at 4.

Claim III

> To be investigated all the [w]ay up to the Ninth Circuit because I'm already in Court. I am under Armstrong/Clark remedica [sic] act per court order. I am also (A.D.A). I have to turn in a response and the DDP C/O Pierreman Officer on 6/25/2020 and the L.T.A. Mrs. Star quarantine over me. I have to turn in a response to the Federal Court by on 7/8/2020.

> While she was helping me she should of never had another inmate in the dayroom listening. It's always been private because I'm the only one in this unit in Federal Court and she's been helping me out since days one. She never asked the inmate to leave and she gave me an ultimatum to dictate the letter for me in 15 minutes. She kept the L.T.A. on repeating what she was dictating for me like I didn't understand [indecipherable] I was explaining to her. She knows I have a (PREA) case pending and what happened to me was on camera. Nobody should of been present. The DDP C/O Pierreman and the DDP Sgt. Working behind Ledesma come and talked to me and sad [sic] the DDP/Clark L.T.A. Mrs. Star would make copies for me the next day. When she come on 6/26/2020 she sad [sic] I already talked to you and refused to help me and I case number 2:21-CV-00312-DMC, Warden Cvana, order, (PC) Foust vs. courts. The inmate that lives in cell I-2-236 low she knows I have two cases pending in Federal Court. I am a DPPL. In I-2-236 low Mr. Jones Edwin D. and I be retaliation.
>
> Id. at 5-6.

## III. DISCUSSION

Section 1983, under which Plaintiff brings this action, provides a cause of action for deprivation of constitutional rights and rights under federal law. 28 U.S.C. § 1983. Section 1983 "'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'" Graham v. Connor, 490 U.S. 386, 393–94 (1989) (quoting Baker v. McCollan, 443 U.S. 137, 144 n.3 (1979)); see also Chapman v. Houston Welfare Rights Org., 441 U.S. 600, 618 (1979); Hall v. City of Los Angeles, 697 F.3d 1059, 1068 (9th Cir. 2012); Crowley v. Nevada, 678 F.3d 730, 734 (9th Cir. 2012); Anderson v. Warner, 451 F.3d 1063, 1067 (9th Cir. 2006). To state a claim under § 1983, a plaintiff must allege that (1) the defendant acted under color of state law and (2) the defendant deprived him or her of rights secured by the Constitution or federal law. Long v. Cty. of Los Angeles, 442 F.3d 1178, 1185 (9th Cir. 2006); see also Marsh v. Cty. of San Diego, 680 F.3d 1148, 1152, 1158 (9th Cir. 2012) (discussing "under color of state law"). "To the extent that the violation of a state law amounts to the deprivation of a state-created interest that reaches beyond that guaranteed by the federal Constitution, Section 1983 offers no redress." Crowley, 678 F.3d at 736.

/ / /

/ / /

A person deprives another of a constitutional right, "within the meaning of § 1983, 'if he does an affirmative act, participates in another's affirmative act, or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made.'" Preschooler II v. Clark Cty. Sch. Bd. of Trs., 479 F.3d 1175, 1183 (9th Cir. 2007) (quoting Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978)). "The requisite causal connection may be established when a state official sets in motion a 'series of acts by others which the actor knows or reasonably should know would cause others to inflict' constitutional harms." Id. This standard of causation "closely resembles the typical 'foreseeability' formulation of proximate cause." Arnold v. Int'l Bus. Mach. Corp., 637 F.2d 1350, 1355 (9th Cir. 1981); see also Harper v. City of Los Angeles, 533 F.3d 1010, 1026 (9th Cir. 2008).

There can be no liability under 42 U.S.C. § 1983 unless there is an adequate link or connection between a defendant's actions and the claimed deprivation. See, e.g., Arnold, 637 F.2d at 1355; Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978). Vague and conclusory allegations of official participation in a civil rights violation are unsatisfactory. Litmon v. Harris, 768 F.3d 1237, 1241 (9th Cir. 2014); Ivey v. Bd. of Regents, 673 F.2d 266, 268 (9th Cir. 1982) (citations omitted).

In all, then, in order to state a section 1983 claim, Plaintiff must allege that a defendant acted under color of law, and that the defendant's conduct deprived him of a constitutional right or right under federal law. Haygood v. Younger, 769 F.2d 1350, 1354 (9th Cir. 1985); Long, 442 F.3d at 1185. Here, the Court is unable to discern the nature of Plaintiff's alleged injury. Plaintiff has not identified any constitutional or federal right alleged to have been violated. Plaintiff's broad allegations that Ledesma would not allow Plaintiff to watch him seal and sign envelopes and that Star was rude to him do not give rise to a constitutional claim on their own. See, e.g., Freeman v. Arpaio, 125 F.3d 732, 738 (9th Cir. 1997), overruled on other grounds by Shakur v. Schriro, 514 F.3d 878, 884–85 (9th Cir. 2008); Keenan v. Hall, 83 F.3d 1083, 1092 (1996); see also White v. Bon, 127 F. App'x 353, 354 (9th Cir. 2005); Oltarzewski v. Ruggiero, 830 F.2d 136, 139 (9th Cir. 1987). Verbal harassment generally does not amount to a constitutional violation. E.g., Freeman, 125 F.3d at 738; Keenan, 83 F.3d at 1092. And, as stated,

other than asserting that Pierreman and the unnamed sergeant told him that Star would make copies, Plaintiff does not allege how either defendant violated his rights.

At best, it appears that Plaintiff may be attempting to assert claims under the First Amendment based on denial of access to mail, retaliation, and/or access to the courts.

**A. Access to Mail**

Prisoners have a First Amendment right to send and receive mail. See Witherow v. Paff, 52 F.3d 264, 265 (9th Cir. 1995) (per curiam). Prison officials may intercept and censor outgoing mail concerning escape plans, proposed criminal activity, or encoded messages. See Procunier v. Martinez, 416 U.S. 396, 413 (1974); see also Witherow, 52 F.3d at 266. Based on security concerns, officials may also prohibit correspondence between inmates. See Turner v. Safley, 482 U.S. 78, 93 (1987). Prison officials may not, however, review outgoing legal mail for legal sufficiency before sending them to the court. See Ex Parte Hull, 312 U.S. 546, 549 (1941). Incoming mail from the courts, as opposed to mail from the prisoner's attorney, for example, is not considered "legal mail." See Keenan v. Hall, 83 F.3d 1083, 1094 (9th Cir. 1996), amended by 135 F.3d 1318 (9th Cir. 1998).

Specific restrictions on prisoner legal mail have been approved by the Supreme Court and Ninth Circuit. For example, prison officials may require that mail from attorneys be identified as such and open such mail in the presence of the prisoner for visual inspection. See Wolff v. McDonnell, 418 U.S. 539, 576-77 (1974); Sherman v. MacDougall, 656 F.2d 527, 528 (9th Cir. 1981). Whether legal mail may be opened outside the inmate's presence, however, is an open question in the Ninth Circuit. See Sherman, 656 F.2d at 528; cf. Mann v. Adams, 846 F.2d 589, 590-91 (9th Cir. 1988) (per curiam) (concluding mail from public agencies, public officials, civil rights groups, and news media may be opened outside the prisoner's presence in light of security concerns). At least three other circuits have concluded that legal mail may not be opened outside the inmate's presence. See id. (citing Taylor v. Sterrett, 532 F.2d 462 (5th Cir. 1976), Back v. Illinois, 504 F.2d 1100 (7th Cir. 1974) (per curiam), and Smith v. Robbins, 452 F.2d 696 (1st Cir. 1972)); see also Samonte v. Maglinti, 2007 WL 1963697 (D. Hawai'i July 3, 2007) (recognizing open question).

Plaintiff fails to adequately plead a legal mail claim. In order to state an access to mail claim, Plaintiff must allege Defendant did more than refused to allow Plaintiff to watch him seal and sign Plaintiff's legal envelope. Plaintiff alleges because Defendant taped and signed Plaintiff's legal mail outside of his presence his legal documents "could have been shared." Plaintiff's allegations only show a possibility of harm and do not show any harm occurred. Plaintiff must state his claim in a way that is not speculative or conclusory. Plaintiff will be provided an opportunity to amend.

**B. Retaliation**

In order to state a claim under 42 U.S.C. § 1983 for retaliation, the prisoner must establish that he was retaliated against for exercising a constitutional right, and that the retaliatory action was not related to a legitimate penological purpose, such as preserving institutional security. See Barnett v. Centoni, 31 F.3d 813, 815-16 (9th Cir. 1994) (per curiam). In meeting this standard, the prisoner must demonstrate a specific link between the alleged retaliation and the exercise of a constitutional right. See Pratt v. Rowland, 65 F.3d 802, 807 (9th Cir. 1995); Valandingham v. Bojorquez, 866 F.2d 1135, 1138-39 (9th Cir. 1989). The prisoner must also show that the exercise of First Amendment rights was chilled, though not necessarily silenced, by the alleged retaliatory conduct. See Resnick v. Hayes, 213 F.3d 443, 449 (9th Cir. 2000), see also Rhodes v. Robinson, 408 F.3d 559, 569 (9th Cir. 2005). Thus, the prisoner plaintiff must establish the following in order to state a claim for retaliation: (1) prison officials took adverse action against the inmate; (2) the adverse action was taken because the inmate engaged in protected conduct; (3) the adverse action chilled the inmate's First Amendment rights; and (4) the adverse action did not serve a legitimate penological purpose. See Rhodes, 408 F.3d at 568.

As to the chilling effect, the Ninth Circuit in Rhodes observed: "If Rhodes had not alleged a chilling effect, perhaps his allegations that he suffered harm would suffice, since harm that is more than minimal will almost always have a chilling effect." Id. at n.11. By way of example, the court cited Pratt in which a retaliation claim had been decided without discussing chilling. See id. This citation is somewhat confusing in that the court in Pratt had no reason to discuss chilling because it concluded that the plaintiff could not prove the absence of legitimate

penological interests. See Pratt, 65 F.3d at 808-09. Nonetheless, while the court has clearly stated that one of the "basic elements" of a First Amendment retaliation claim is that the adverse action "chilled the inmates exercise of his First Amendment rights," id. at 567-68, see also Resnick, 213 F.3d at 449, the comment in Rhodes at footnote 11 suggests that adverse action which is more than minimal satisfies this element. Thus, if this reading of Rhodes is correct, the chilling effect element is essentially subsumed by adverse action.

Plaintiff fails to sufficiently plead a retaliation claim against Defendant Ledesma. The Court can infer from Plaintiff's allegations an adverse action was taken. However, Plaintiff does not provide sufficient information to show the other elements have been met. See Rhodes, 408 F.3d at 568. Plaintiff fails to plead Defendant Ledesma took adverse action because Plaintiff engaged in protected conduct. See ECF No. 43. Plaintiff fails to plead Defendant's conduct chilled Plaintiff's First Amendment rights. Id. Additionally, Plaintiff fails to plead that Defendant's conduct did not serve any legitimate penological purpose. Id. For the above reasons, Plaintiff second amended complaint fails to state a retaliation claim. Again, Plaintiff will be provided leave to amend.

**C. Access to Courts**

Prisoners have a First Amendment right of access to the courts. See Lewis v. Casey, 518 U.S. 343, 346 (1996); Bounds v. Smith, 430 U.S. 817, 821 (1977); Jones v. Williams, 791 F.3d 1023, 1035 (9th Cir. 2015); Bradley v. Hall, 64 F.3d 1276, 1279 (9th Cir. 1995). Prison officials must "assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law." Bounds, 430 U.S. at 828; Silva v. Di Vittorio, 658 F.3d 1090, 1103 (9th Cir. 2011) (overruled on other grounds as stated by Richey v. Dahne, 807 F.3d 1202, 1209 n.6 (9th Cir. 2015). But the right does not require a particular methodology. See Lewis, 518 U.S. at 356. It guarantees the "capability of bringing contemplated challenges to sentences or conditions of confinement before the courts." Id. It does not promise to turn inmates into effective litigators. See id. at 354-55; Phillips v. Hust, 588 F.3d 652, 655 (9th Cir. 2009). The right of access secures the ability to present non-frivolous claims to the court, it does not secure a right to

discover claims or litigate them effectively once filed.  See Lewis, 518 U.S. at 354-55; Phillips, 477 F.3d at 655.  The tools required are those that inmates need to attack their sentences or challenge conditions of confinement.  See Lewis, 518 U.S. at 355; Phillips, 477 F.3d at 655.  "Impairment of any other litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration." Lewis, 518 U.S. at 355; see Phillips, 477 F.3d at 655.  The right is restricted to non-frivolous criminal appeals, civil rights actions under 42 U.S.C. § 1983, and habeas corpus petitions.  Lewis, 518 U.S. at 353 n.3, 354-56.

The United States Supreme Court has identified two categories of access-to-court claims.  Christopher v. Harbury, 536 U.S. 403, 412-13 (2002).  The first category includes "forward-looking" claims, which allege that official action presently frustrates a plaintiff's ability to prepare and file a suit.  Id. at 413.  The second category, "backward-looking" claims, allege that due to official action, a specific case "cannot now be tried (or tried with all material evidence), no matter what official action may be in the future."  Id. at 413-14.  These cases look "backward to a time when specific litigation ended poorly, or could not have commenced, or could have produced a remedy subsequently unobtainable."  Id. at 414.

To establish an access to the court violation, a prisoner must identify an actual injury.  Lewis, 518 U.S. at 349-351; Nev. Dep't of Corrs. v. Greene, 648 F.3d 1014, 1018 (9th Cir. 2011); Urmancheev v. Anglea, No.:1:19-cv-00791-DAD-JLT (PC), 2020 WL 1904818, at *2 (E.D. Cal. Apr. 17, 2020).  An actual injury is "actual prejudice with respect to contemplated or existing litigation, such as the inability to meet a filing deadline or to present a claim."  Lewis, 518 U.S. at 349; Urmancheev, 2019 WL 1904818, at *2.  An actual injury is a jurisdictional requirement and may not be waived.  See Lewis, 518 U.S. at 348-52; Urmancheev, 2019 WL 1904818, at *2.  And in the backward-looking context more specifically, a plaintiff must identify: (1) loss of a "nonfrivolous," "arguable" underlying claim; (2) the official acts that frustrated the litigation of the underlying claim; and (3) a remedy that "may be awarded as recompense but [is] not otherwise available in some suit that may yet be brought."  Harbury, 536 U.S. at 414-18; Urmancheev, 2019 WL 1904818, at *2; Kabede v. Brown, No. 2:16-cv-1765 DB (P), 2017 WL 714300, at *6 (E.D. Cal. Feb. 22, 2017).

Plaintiff fails to sufficiently state an access to courts claim. To state an access to mail claim, Plaintiff must allege an actual injury. Lewis, 518 U.S. at 349-351. Here, Plaintiff only alleges Defendant Ledesma would not allow him to watch him sign and seal his legal mail. See ECF No. 43, pg. 3. Plaintiff does not allege any injury occurred. Additionally, Plaintiff alleges Defendant Star should not have read Plaintiff's legal materials in front of another person. See id. at 4. However, Plaintiff fails to plead how either of Defendants' actions prevented him from accessing the courts or how these alleged actions frustrated Plaintiff's past litigation. Therefore, because Plaintiff failed to plead an actual injury, Plaintiff fails to state an access to courts claim. Plaintiff will be provided an opportunity to amend.

## IV. CONCLUSION

Because it is possible that the deficiencies identified in this order may be cured by amending the complaint, Plaintiff is entitled to leave to amend prior to dismissal of the entire action. See Lopez v. Smith, 203 F.3d 1122, 1126, 1131 (9th Cir. 2000) (en banc). Plaintiff is informed that, as a general rule, an amended complaint supersedes the original complaint. See Ferdik v. Bonzelet, 963 F.2d 1258, 1262 (9th Cir. 1992). Thus, following dismissal with leave to amend, all claims alleged in the original complaint which are not alleged in the amended complaint are waived. See King v. Atiyeh, 814 F.2d 565, 567 (9th Cir. 1987). Therefore, if Plaintiff amends the complaint, the Court cannot refer to the prior pleading in order to make Plaintiff's amended complaint complete. See Local Rule 220. An amended complaint must be complete in itself without reference to any prior pleading. See id.

If Plaintiff chooses to amend the complaint, Plaintiff must demonstrate how the conduct complained of has resulted in a deprivation of Plaintiff's constitutional rights. See Ellis v. Cassidy, 625 F.2d 227 (9th Cir. 1980). The complaint must allege in specific terms how each named defendant is involved and must set forth some affirmative link or connection between each defendant's actions and the claimed deprivation. See May v. Enomoto, 633 F.2d 164, 167 (9th Cir. 1980); Johnson, 588 F.2d at 743; see also Preschooler II, 479 F.3d at 1183.

/ / /

Finally, Plaintiff is warned that failure to file an amended complaint within the time provided in this order may be grounds for dismissal of this action. See Ferdik, 963 F.2d at 1260-61; see also Local Rule 110. Plaintiff is also warned that a complaint which fails to comply with Rule 8 may, in the Court's discretion, be dismissed with prejudice pursuant to Rule 41(b). See Nevijel v. North Coast Life Ins. Co., 651 F.2d 671, 673 (9th Cir. 1981).

Accordingly, IT IS HEREBY ORDERED that:

1. Plaintiff's second amendment complaint is dismissed with leave to amend; and

2. Plaintiff shall file a third amended complaint within 30 days of the date of service of this order.

Dated: April 7, 2023

DENNIS M. COTA
UNITED STATES MAGISTRATE JUDGE